IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

APRIL M. LUCAS,                          :
                                         :
        Plaintiff,                       :
                                         :
vs.                                      :      CIVIL ACTION 14-0191-CB-M
                                         :
CAROLYN W. COLVIN,                       :
Commissioner of Social Security,         :
                                         :
        Defendant.                       :

REPORT AND RECOMMENDATION

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for disability insurance benefits.  The action was referred for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was waived in this action (Doc. 17).  Upon consideration of the administrative record and the memoranda of the parties, it is recommended that the decision of the Commissioner be affirmed, that this action be dismissed, and that judgment be entered in favor of Defendant Michael J. Astrue and against April M. Lucas.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239
(11th Cir. 1983), which must be supported by substantial
evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The
substantial evidence test requires "that the decision under
review be supported by evidence sufficient to justify a
reasoning mind in accepting it; it is more than a scintilla, but
less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918
(11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205
(D. Md. 1982).

At the time of the administrative hearing, Plaintiff was
thirty-five years old, had completed a college education (Tr.
39), and had previous work experience as an ultrasound
technologist, data entry clerk, office manager, and secretary
(*see* Tr. 51). In claiming benefits, Lucas alleges disability
due to fibromyalgia, migraine headaches, and major depressive
disorder (Doc. 13 Fact Sheet).

The Plaintiff filed a protective application for disability
benefits on April 23, 2012 (Tr. 140-46; *see* Tr. 19). Benefits
were denied following a hearing by an Administrative Law Judge
(ALJ) who determined that although she could not return to her
past relevant work, there were light work jobs that she could
perform (Tr. 19-29). Plaintiff requested review of the hearing

2

decision (Tr. 14) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Lucas alleges that:  (1) The ALJ did not properly consider the opinions and conclusions of her treating physician; (2) the ALJ improperly discounted her testimony of pain and limitation; and (3) the ALJ failed to re-contact the consultative examiner for questions about the opinion rendered (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).  The Court's review of the relevant evidence follows.[1]

On August 10, 2011, Dr. Mark Robinson saw Lucas for a migraine headache and nausea; he prescribed Stadol,[2] Phenergan,[3] and Topomax[4] (Tr. 304).[5]  On September 9, Robinson again saw Plaintiff for a three-day headache; Lucas indicated that

---

[1]Plaintiff's asserted date of disability is October 30, 2011 (Tr. 140), so the Court will not review the evidence preceding that date by more than several months.

[2]*Stadol* is a synthetic opioid, administered by injection or nasal spray, used to relieve pain.  *See* http://www.drugs.com/pro/stadol.html

[3]**Error! Main Document Only.Error! Main Document Only.***Phenergan* is used as a sedative or sleep aid or to treat nausea, vomiting, or pain. http://www.drugs.com/phenergan.html

[4]*Topomax* is used in the treatment of migraine headaches.  **Error! Main Document Only.***Physician's Desk Reference* 2378-79 (62nd ed. 2008).

[5]The Court notes that drug therapy is the primary treatment for Lucas's headaches throughout this record.  The Court will report new drugs as they are prescribed, but will not keep a "scorecard" of all drugs in use at any particular time.

although she got no relief from her home medications, the Topomax helped with the frequency of the headaches (Tr. 303). On September 26, 2011, Dr. Elizabeth J. Low, a General Practitioner, examined Plaintiff for a dull, throbbing, continuing headache with photobia, nausea, and vomiting; Low noted that Lucas was in no distress, continued her former medications, and prescribed Savella,[6] Amitriptyline,[7] Maxalt,[8] and Ultram[9] (Tr. 298-301, 513).  On October 10, Plaintiff's migraine resulted in injections of Phenergan and Demerol[10] as well as a prescription for Demerol (Tr. 296-97).  The next day, Lucas was seen for a three-day headache; the doctor noted no acute distress, diagnosed a migraine, and continued the Demerol prescription (Tr. 292-94).  On November 7, Dr. Low examined Plaintiff for a three-day headache (Tr. 282-85).  On December 15, Lucas complained of a headache, nausea, and blurred vision

---

[6] *Savella* is used in the treatment of fibromyalgia.  *See* http://www.drugs.com/savella.html
[7] **Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression.  *Physician's Desk Reference* 3163 (52nd ed. 1998).
[8] *Maxalt* is used for the acute treatment of migraine attacks. **Error! Main Document Only.***Physician's Desk Reference* 1904-1905 (66th ed. 2012).
[9] **Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain."  *Physician's Desk Reference* 2218 (54th ed. 2000).
[10] **Error! Main Document Only.***Demerol* is a narcotic analgesic used for the relief of moderate to severe pain.  *Physician's Desk Reference* 2570-72 (52nd ed. 1998).

4

for which Dr. Low continued the Stadol prescription (Tr. 274-76).  A throbbing two-day headache on December 26 led to re-prescribing of Stadol and Phenergan (Tr. 270-73).

On October 3, 2011, Dr. Ellen W. McKnight, Rheumatologist, examined Lucas for an inability to stay asleep, fatigue, weakness, muscular pain, stiffness, headaches, and poor memory; Plaintiff rated her pain as five on a ten-point scale (Tr. 323-27; *see also* Tr. 25; Doc. 13, p. 3).  The Doctor noted that she was in no acute distress and the physical exam was normal; McKnight's impression was fibromyalgia, fatigue, chronic debilitating migraine headaches, severe depression, restless legs syndrome, osteoarthritis, possible inflammatory polyarthritis, and vitamin D deficiency for which she prescribed Mobic[11] and Vitamin D and continued her Prozac,[12] Topamax, and Maxalt.  On March 13, 2012, McKnight's examination reported everything to be within normal limits; she prescribed Cymbalta[13] and decreased the Prozac daily dose (Tr. 319-22).

---

[11]**Error! Main Document Only.**_Mobic_ is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[12]**Error! Main Document Only.**_Prozac_ is used for the treatment of depression.  *Physician's Desk Reference* 859-60 (52nd ed. 1998).

[13]Cymbalta is used in the treatment of major depressive disorder. **Error! Main Document Only.**_Physician's Desk Reference_ 1791-93 (62nd ed. 2008).

On February 14, 2012, Dr. Badr Sultan examined Plaintiff for her headaches (Tr. 315-17).  His neurological exam was as follows:

> The patient was alert and oriented x 3. Her speech and language were intact. Cranial nerve examination showed full visual field and intact extraocular muscles. Facial sensations were intact.  Facial muscles were symmetric.  Motor examination showed 5/5 muscle strength throughout. Coordination examination showed finger-to-nose without dysemetria.  Deep tendon reflexes showed symmetric response throughout.  Plantar was downgoing bilaterally.

(Tr. 316).  Dr. Sultan discontinued one drug and prescribed Lyrica[14] and Fioricet;[15] he also discussed some treatment options that could be used in the future.

Records from Dr. Low indicate that she examined Lucas five times between February 28 and April 2, 2012 for complaints of headache (Tr. 332-53).  Though four exams noted that Plaintiff was in no acute distress, the March 19 record indicates that she was in obvious distress (Tr. 343).

On March 30, Dr. Mark E. Larkins, of the West Florida

---

[14]*Lyrica* is used for the management of neuropathic pain.  **Error! Main Document Only.***Physician's Desk Reference* 2517 (62nd ed. 2008).

[15]*Fioricet* contains a barbiturate and relaxes muscle contractions involved in tension headaches.  http://www.drugs.com/fioricet.html

Medical Center, examined Lucas for neck pain and headaches (Tr. 361-63).  On exam, the Doctor noted discomfort on extension of the cervical spine indicating possible cervical facet loading with some tenderness to palpation over the paracervical musculature at the splenius cervicis and capilis regions, into the facets and trapezius bilaterally.  X-rays showed a normal cervical spine (Tr. 364).  Indocin[16] was prescribed (Tr. 362). On April 6, 2012, Dr. Kristin L. Davis examined Lucas and noted that she had "significant analgesic overuse with overuse of stadol, maxalt, fioricet, Excedrin migraine and Indocin" before prescribing Depakote[17] and Verapamil[18] (Tr. 360; *see generally* Tr. 359-61).  Dr. Davis saw Plaintiff again four days later and noted that she had quit taking most of the drugs the Doctor had indicated were being overused; Lucas presented with a headache and reported having been fired from her job because she had missed too much work (Tr. 356-57).  The examination was normal though Plaintiff was reported to be in mild distress; Davis

---

[16]**Error! Main Document Only.***Indocin* is a non-steroidal drug found to be effective in the treatment of moderate to severe rheumatoid arthritis, moderate to severe ankylosing spondylitis, moderate to severe osteoarthritis, acute painful shoulder (bursitis and/or tendinitis), and acute gouty arthritis.  *Physician's Desk Reference* 1676 (52nd ed. 1998).

[17]**Error! Main Document Only.***Depakote* is used for the treatment of seizures.  *Physician's Desk Reference* 428-34 (52nd ed. 1998).

[18]*Verapamil* is used for the treatment of hypertension.  **Error! Main Document Only.***Physician's Desk Reference* 3070-71 (62nd ed. 2008).

indicated a desire to try Botox injections for the headaches. On April 16, Dr. Larkins determined that Botox injections were inappropriate at that time (Tr. 355).

On June 4, Plaintiff went to the D. W. McMillan Memorial Hospital Emergency Room for a migraine headache for which she was given Phenergan, Toradol, and Morphine; she was discharged in fair, but improved condition (Tr. 367-84).

On June 12, 2012, Lucas returned to the McMillan Hospital ER for a migraine and was given Phenergan and Decadron[19] (Tr. 385-97). She was discharged home in stable, improved condition with prescriptions for Compazine[20] and Fioricet. Two days later though, Plaintiff was admitted to the hospital overnight for an intractable headache, gastroenteritis with dehydration, and non-cardiac chest pain (Tr. 399-407). Lucas was treated with Morphine, and Toradol; Cymbalta and Toradol doses were decreased, Prozac was discontinued, and Zoloft[21] was prescribed.

On July 5, Plaintiff went to PRI Med Wetumpka for a migraine; though she was in no apparent distress, she was

---

[19]**Error! Main Document Only.**_Decadron_ is used for, among other things, the treatment of rheumatic disorders. _Physician's Desk Reference_ 1635-38 (52nd ed. 1998).

[20]_Compazine_ is an anti-psychotic drug used to treat psychotic disorders, anxiety, and to control severe nausea and vomiting. http://www.drugs.com/mtm/compazine.html

[21]**Error! Main Document Only.**_Zoloft_ is "indicated for the treatment of depression." _Physician's Desk Reference_ 2229-34 (52nd ed. 1998).

treated with Demerol and Phenergan (Tr. 409-11).

On August 5, Lucas returned to the McMillan Hospital ER for a migraine and was treated with Vistaril,[22] Decadron, and Toradol (Tr. 412-20).

On August 31, 2012 Forensic Psychologist Robert A. DeFrancisco examined Lucas at the request of the Social Security Administration (Tr. 421-23). He noted that her affect was appropriate to her mood: "Her mood is one of frustration and some anger, some depression as well as obvious pain" (Tr. 422). Her memory was grossly intact for both short- and long-term memory. "She [was] preoccupied with her depression and her pain" (Tr. 422). Insight was fair. DeFrancisco noted that she could "understand and remember instructions [though] carrying them out appear to be a major issue for her" (Tr. 423). "Restriction of activities/constriction of interest seem [] to be primarily a result of pain issues and depression issues which probably are now secondary to her pain problem" (Tr. 423).

On August 15, 2012, Dr. McKnight examined Lucas who rated her pain as eight; the Doctor noted that she "has had a very difficult course recently with a very significant worsening of her migraine headaches which has considerably flared her

---

[22]*Vistaril* is used to treat anxiety and tension and may be used to control nausea and vomiting.  http://www.drugs.com/vistaril.html

fibromyalgia" (Tr. 432; *see generally* Tr. 429-32).  McKnight

adjusted her medications, adding Tramadol[23] and Temazepam[24] to her

regimen.  On September 25, 2012, Plaintiff again saw McKnight

for deep aching in her arms, neck, and shoulders as well as

severe fatigue; she rated her pain as eight (Tr. 425-28).  Lucas

noted that she was having some difficulty with dressing herself,

getting in and out of bed, walking outdoors on flat ground, and

washing/drying herself.  McKnight's examination was within

normal limits; medications were continued and Plaintiff was to

return in four months.

Lucas was examined by Dr. Low or Dr. Maria I. Villarreal

seven times between May 4 and December 3, 2012, primarily—though

not exclusively—for headaches (Tr. 454-92).  Low's examinations

were, generally, essentially normal; medications were continued

or new ones prescribed.  On June 14, the Doctor noted Lucas to

be in acute distress because of non-radiating chest discomfort,

accompanied by fatigue, nausea, vomiting, and diarrhea;

Plaintiff did not specifically complain of a migraine (Tr. 480-

83).  A non-contrast CT brain scan was negative; chest x-rays

---

[23] *Tramadol* "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time." **Error! Main Document Only.** *Physician's Desk Reference* 2520 (66th ed. 2012).

[24] *Temazepam* is used to treat insomnia symptoms, such as falling—or staying—asleep.  http://www.drugs.com/temazepam.html

were normal (Tr. 485-86).  On July 13, Lucas received an injection of promethazine[25] (Tr. 479).  On August 10, Plaintiff was noted to be in obvious distress though the doctor noted that there were "no special circumstances for examination;" promethazine was ordered for nausea as needed (Tr. 474; *see generally* Tr. 473-76).  On September 20, 2012, Lucas was found to be in acute distress though, again, there were "no special circumstances for examination" (Tr. 471; *see generally* Tr. 470-72).  On October 8, Dr. Low found Plaintiff to be in acute distress; Lucas reported that her pain got worse with movement (Tr. 462-66).  A report from Dr. Davis on November 16 indicated that Plaintiff had had Botox injections two months earlier; she indicated that she was having three-to-four headaches per week, down from the four-to-five she had been experiencing (Tr. 458-60).  Davis found her in no acute distress and suggested that more injections a month later may be in order.  On December 3, Lucas complained of depression and insomnia; Dr. Low found her to be in no acute distress but prescribed Ambien[26] (Tr. 454-57).

On December 18, a Pain Assessment form was completed by Dr.

---

[25]*Promethazine* is used to treat nausea and vomiting or used as a sedative or sleep aid.  http://www.drugs.com/promethazine.html

[26]*Ambien***Error! Main Document Only.** is a class four narcotic used for the short-term treatment of insomnia.  *Physician's Desk Reference* 2799 (62nd ed. 2008).

Ellen McKnight, indicating that Plaintiff experienced pain that was intractable and virtually incapacitating; physical exercise would increase her pain to the extent that she would have to have bed rest or medication (Tr. 494).  McKnight also indicated that drug side effects would be severe and would limit Lucas's effectiveness due to distraction, inattention, and drowsiness. On the same date, the Doctor also completed a Physical Capacities Evaluation (hereinafter *PCE)* in which she found Plaintiff capable of lifting and carrying one pound frequently and five pounds occasionally; Lucas was capable of sitting for two hours and standing or walking for less than one hour during an eight-hour day (Tr. 495).  McKnight indicated that Plaintiff could perform fine manipulation occasionally, pushing and pulling of arm or leg controls, gross manipulation, reaching, and operating motor vehicles only rarely, and that she could never climb, bend, stoop, or work around hazardous machinery; the Doctor indicated that Plaintiff would miss more than four days a month from work because of her impairments or treatment.

On December 31, 2012, Dr. Villarreal examined Lucas for a two-day headache; she was noted to be in some distress (Tr. 504-08).  On January 16, 2013, Dr. Low saw Plaintiff for upper respiratory tract symptoms and a headache, finding her in no

acute distress (Tr. 497-503).  On April 16, Low again examined Lucas for upper respiratory tract symptoms, a headache and sunburn; Plaintiff was in no acute distress and the exam was normal (Tr. 516-19).  On April 26, Lucas received Phenergan and Toradol injections (Tr. 515).  On June 3, Plaintiff complained of depression and feelings of sadness, hopelessness, and excessive tearfulness; Low noted that she was in no acute distress and prescribed Trazodone[27] (Tr. 521-27).  On July 24, 2013, Plaintiff again had upper respiratory tract symptoms and a headache; the Doctor diagnosed bronchitis, rhinitis, sinusitis, depressive disorder, fibromyalgia, and insomnia (Tr. 528-31).

On July 8, Psychologist DeFrancisco noted that Lucas's affect was flat, her mood dysphoric, and she was in obvious pain; her symptoms were consistent with pain and depression secondary to pain (Tr. 533-34).  The Psychologist adjusted Plaintiff's medications and indicated that she needed chronic pain management.

On August 13, Dr. Ellen W. McKnight examined Lucas for complaints of severe depression and muscle pain in her shoulders, rated as eight; the Doctor's exam found her to be in no acute distress and within normal limits (Tr. 539-44).

---

[27]**Error! Main Document Only.**_Trazodone_ is used for the treatment of depression.  _Physician's Desk Reference_ 518 (52nd ed. 1998).

13

McKnight prescribed Neurontin,[28] and set out the following
statement:

> This patient has a very severe
> fibromyalgia and fatigue issues.  She has
> had severe depression and anxiety.  It is my
> opinion that she is not able to work on
> either a full or part-time position.  I do
> not feel her medical condition allows for
> this and she is on numerous medications that
> interfere with her ability to concentrate
> and decrease her cognitive function.  I feel
> that this is a permanent condition.

(Tr. 542).  The Doctor indicated that Lucas should return in
four months.

At the evidentiary hearing before the ALJ, Plaintiff
testified that she sought disability benefits at the urging of
Dr. McKnight (Tr. 40; *see generally* Tr. 38-50).  Lucas had
worked after that date, but her boss let her go because she was
missing work two days a week due to her migraines, fibromyalgia,
or the treatment of them (Tr. 40-41).  She also suffered from
migraines, accompanied by an aura, nausea, and throbbing pain;
the headaches occurred twelve-to-fifteen days a month and lasted
all day, requiring bed rest and medication (Tr. 44).  Prescribed
medications did not work on the migraines as well as the

---

[28]**Error! Main Document Only.***Neurontin* is used in the treatment of
partial seizures.  *Physician's Desk Reference* 2110-13 (52nd ed. 1998).

injections of Toradol and Phenergan (Tr. 45).  Lucas also suffered from depression and chronic fatigue (Tr. 45). Plaintiff estimated that she could walk for about fifteen minutes, stand about thirty minutes, and sit for about forty-five minutes before experiencing a total loss of energy or pain (Tr. 45-46).  She also had some joint pain in her fingers reported to be osteoarthritis (Tr. 46).  On a lot of days, Plaintiff did not have the energy to drive (Tr. 46).  Lucas had problems with concentration; her mother took care of the laundry, meal preparation, and making sure that the children completed their homework (Tr. 47).  Plaintiff spent about fifteen hours a day in bed, though she only got about five-to-six hours of sleep a day; she spent the rest of her time reading (Tr. 48).  This concludes the summarized evidence of record.

In bringing this action, Lucas first claims that the ALJ did not properly consider the opinions and conclusions of her treating physician, Dr. McKnight (Doc. 13, pp. 3-8).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."

*Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[29] *see also* 20 C.F.R. § 404.1527 (2014).

In her determination, after summarizing the medical evidence, the ALJ made the following findings regarding Dr. McKnight's opinions:

> Dr. McKnight has opined that the claimant experiences disabling pain and is unable to perform even sedentary work activities on a regular and continuing basis (Exhibits 17F and 24F).  Although Dr. McKnight is a treating medical source, I give her overly restrictive opinion little weight.  There is little in the way of abnormal objective findings in the medical evidence of record, and Dr. McKnight is basing a good portion of her opinion on the claimant's subjective complaints.

(Tr. 28).  The ALJ also found that there was "nothing in Dr. McKnight's records indicating that fibromyalgia tender points were identified, and the claimant acknowledged at the hearing that there were no blood test results or other clinical findings for chronic fatigue" (Tr. 27).

The Court finds the ALJ's conclusions are supported by substantial evidence.  The Court notes that although McKnight's

---

[29]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

evidence of record covers nearly two years (October 3, 2011 through August 13, 2013), there are only five examinations during the period considered by the Court; that amounts to an exam approximately every six months. While that fact does not disprove her conclusions, the Court also notes that the Doctor's evidence reveals no real substance from McKnight's exams themselves. Lucas's subjective claims figure largely throughout each report while the Doctor's own objective findings barely make an appearance; McKnight's notations are generally limited to findings that Plaintiff is in no acute distress and the exam was within normal limits (Tr. 321, 326, 426, 430, 541). The Court further notes that the Pain Assessment and PCE forms completed by McKnight on December 18, 2012 (Tr. 494-95) were without benefit of a recent exam as the Doctor had last seen Lucas three months earlier on September 2, 2012 (Tr. 425-28). The Rheumatologist's final exam came almost a year later, on August 13, 2013, and even though she ventured the opinion that Plaintiff was totally disabled and unable to perform any work, the examination notes indicate nothing to support the conclusion (Tr. 539-44). Finally, the Court notes that no other evidence of record supports McKnight's findings of extreme limitation. Lucas's claim that the ALJ did not properly consider Dr.

17

McKnight's opinions is without merit.

Plaintiff next claims that the ALJ improperly discounted her testimony of pain and limitation (Doc. 13, pp. 8-13).  The standard by which Lucas's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986).  Furthermore, the Social Security regulations specifically state the following:

statements about your pain or other symptoms

18

> will not alone establish that you are
> disabled; there must be medical signs and
> laboratory findings which show that you have
> a medical impairment(s) which could
> reasonably be expected to produce the pain
> or other symptoms alleged and which, when
> considered with all of the other evidence
> (including statements about the intensity
> and persistence of your pain or other
> symptoms which may reasonably be accepted as
> consistent with the medical signs and
> laboratory findings), would lead to a
> conclusion that you are disabled.

20 C.F.R. § 404.1529(a) (2014).

In her determination, the ALJ found that Plaintiff's
testimony was not credible; specifically, "the claimant's
statements concerning the intensity, persistence, and limiting
effects of these symptoms are not entirely credible for the
reasons explained in this decision" (Tr. 25).  Regarding Lucas's
fibromyalgia and osteoarthritis, the ALJ noted that although
there were some indications of "neck tenderness and obvious
pain," there were other musculoskeletal examinations that were
normal; additionally, x-ray results had all been normal (Tr.
25).  In spite of the multitude of medications taken, the ALJ
noted Plaintiff's claim "that she does not get much relief from
her pain" (Tr. 25).  The ALJ further noted, with regard to
Lucas's migraines, that although pain and distress have been
noted by physicians at times, no objective testing confirmed any

abnormal findings; again, Plaintiff generally claimed that she received no relief from treatment (Tr. 26).  Similar findings and claims were made regarding Lucas's assertions of depression.

The ALJ went on to question Lucas's credibility, noting that she engaged in a range of activities that cast doubt on her testimony (Tr. 27).  The ALJ also noted that her Doctor's medical records did not support the claims she made of extreme limitations; those records also failed to provide objective evidence of disability (Tr. 27).

The Court finds substantial support for the ALJ's decision. Lucas's claims of extreme pain and limitation are supported by the medical records only in that the Doctors repeat Plaintiff's claims; the exams, however, regularly report normal findings. The Court agrees with the ALJ's conclusion that McKnight's opinions are based, in large part, on Lucas's subjective complaints (Tr. 28).  Even Dr. Low, who examined Plaintiff the most often and prescribed many different medications to alleviate her claims of intractable headaches, generally always reported that Lucas was in no acute distress and reported normal examinations.  While Plaintiff certainly suffers some pain and limitation, this medical record does not support the extreme claims made.

Finally, Lucas asserts that the ALJ failed to re-contact the consultative examiner for questions about the opinion rendered (Doc. 13).  More specifically, Plaintiff refers to the report of Psychologist DeFrancisco in which he states the following:  "She can understand and remember instructions, [sic] carrying them out appear to be a major issue for her" (Tr. 423).  In reviewing this evidence, the ALJ gave some weight to DeFrancisco's opinion overall, but gave little weight to his opinion that carrying out instructions would be a major issue for Lucas, finding that conclusion vague (Tr. 27-28).

Plaintiff urges the Court to find the ALJ in error for not fully developing the record (Doc. 13, pp. 13-15).  The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court notes that the Psychologist's report indicates that Lucas's problems are two-fold:  "1) pain disorder associated by general medical condition 2) major depression as a result of problem number one" (Tr. 423).  The Government has argued that because DeFrancisco found Plaintiff's problems to be more physical than mental, she has not sustained her burden of

demonstrating disabling mental limitations (Doc. 14, pp. 13-14).
The Court notes that the burden is on the claimant to prove that
she is disabled.  *See* 20 C.F.R. § 404.1512(a) (2014); *see also*
*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The
Psychologist's conclusions, considered in a light most favorable
to Lucas, do not support a finding of disability on the basis of
depression.  His conclusions on examination ten months later
confirm this finding (Tr. 533-34).  The Court further finds that
the balance of the record also fails to support such a finding.
Plaintiff's claim otherwise is without merit.

Lucas has raised three different claims in bringing this
action.  All are without merit.  Upon consideration of the
entire record, the Court finds "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is
recommended that the Secretary's decision be affirmed, *see*
*Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that
this action be dismissed, and that judgment be entered in favor
of Defendant Carolyn W. Colvin and against Plaintiff April M.
Lucas.

NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 15th day of January, 2015.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE